UNITED STATES DISTRICT
COURT MIDDLE DISTRICT OF
FLORIDA, TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                          Case No.: 8:19-CR-548-T-02SPF

JOSE EMILIO PILLIGUA MENDOZA
_____

### SENTENCING MEMORANDUM

COMES NOW, undersigned counsel, on behalf of the Defendant, Jose Emilio Pilligua Mendoza, and files this sentencing memorandum pursuant to USSG sections 3B1.2, 5C1.2, 2D1.1(a)(5), 2D1.1(b)(18) & 18 U.S.C. 3553. In support states as follows:

**I.    REQUEST FOR A BELOW GUIDELINE SENTENCE (VARIANCE)**

1. The Defendant respectfully requests a term of imprisonment not greater than **60 months** (five years), **category 1, level 25, 57-71 months**. The defendant respectfully makes this request using the following calculation: Subtracting from U.S. Probation's ultimate calculation of level 33, (category 1 and 0 criminal history points), four levels for minor role, two levels consistent with the First Step Act, two levels for substantial assistance and cooperation with or without the filing of a 5K motion by the government (additional argument to be provided at sentencing). The sum of which is sufficient but not greater than necessary to accomplish the objectives as set forth in 18 U.S.C. 3553.

2. A plea agreement was not filed in this case.

3. The Defendant requests credit for time served in state and federal custody.

**II.   PRE-SENTENCE INVESTIGATION REPORT & DEFENDANT'S HISTORY**

As reported in the PSR, Mr. Pilligua Mendoza, age 31, a citizen of Ecuador who, prior to

his arrest, resided with his wife, their two children and at least three other members of their extended family. To characterize Mr. Pilligua Mendoza as poor would severely understate his social and economic condition. Mr. Pilligua Mendoza is one of eleven children, his mother and father passing away thirteen and eight years ago, respectively. Both of Mr. Pilligua Mendoza's parents suffered from and succumbed to diabetes complications. Sadly, two of Mr. Pilligua Mendoza's brothers have also died from complications related to diabetes, one of which, at the relatively young age of forty-two. As his exceptionally large family was poor and without much in the way of resources, Mr. Pilligua Mendoza was forced to end his formal education at age thirteen and began working to help support his family. Notwithstanding Mr. Pilligua Mendoza's limited trade skills and formal education, he is a hard worker willing to accept any honest full time employment. Unfortunately, Ecuador's economy does not present many opportunities for someone with limited education and skills. Prior to his plea in this case, Mr. Pilligua Mendoza had no criminal history, never had used illicit substances and rarely drank an alcoholic beverage. Regrettably, and out of financial desperation to provide for his family, he agreed to participate in the venture that is the basis of this case.

III. **LEGAL ANALYSIS FOR SENTENCING**

A.   Pursuant to U*nited States v. Booker*, 543 U.S. 220 (2005) and *Gall v. United States*, 128 S.Ct. 586 (2007), the Defendant respectfully requests this Honorable Court adopt the following analysis to reach a reasonable but not greater than necessary sentence:

1. Determine the applicable advisory federal sentencing Guideline range.

2. Determine whether, pursuant to the Sentencing Commission's policy statements, any variances from the advisory Guideline range apply.

3. Determine an appropriate sentence in light of the factors set forth in Title 18 U.S.C. Section 3553(a)(1)(3-7) each of which are to be considered with equal weight by a District Court as it gives to the advisory federal

Sentencing Guidelines. The District Court may sentence a defendant below Guidelines on the *sole basis* that it disagrees with the advisory federal Sentencing Guidelines. *Spears v. United States*, 2009 WL 129044 (Jan. 21, 2008), the Court need not rely on the 3553(a) factors described above for a variance from the advisory Guidelines.

IV. **THE EFFECT OF *BOOKER V. UNITED STATES OF AMERICA***

    A.    In *Booker v. United States of America*, 125 S.Ct. 785 (2005), the Federal Sentencing Guidelines were deemed unconstitutional because their mandatory nature had judges, not juries, finding facts that enhanced the sentence of a defendant.

    B.    The Supreme Court held this conflicted with a defendant's Sixth Amendment right to trial (and findings) by a jury.

    C.    As a result, the Federal Sentencing Guidelines are now advisory rather than mandatory in nature.

    D.    Notwithstanding the Supreme Court's admonitions in *Booker* and *Gall* to District Court judges that sentencing requires individualized attention to each defendant, statistics published on the Sentencing Commission's website reveal that little has changed.

        1.    Prior to *Booker*, approximately 64% of all federal cases were sentenced within the Guidelines while after *Booker* the number is 61.4%. Two-thirds of the 38.6% of federal defendants sentenced below the Guidelines were the result of government-sponsored motions based upon substantial assistance ***(It is not anticipated the government will, at sentencing, file a motion regarding substantial assistance)***.

        2.    Justice Stevens in his concurring opinion stated: "I am not blind to the fact that, as a practical matter, many federal judges continue to treat the Guidelines as

virtually mandatory after our decision in Booker." *Rita v. United States*, 551 U.S. 338 at 336 (2007).

## V. THE EFFECT OF *GALL V. UNITED STATES OF AMERICA*

A. Pursuant to the United States Supreme Court decision of *Gall v. United States*, No. 07-7949 (U.S. Ct. Dec. 10, 2007), the Supreme Court once again ordered that broad discretion be restored to federal District Judges by stating that the Guidelines are <u>not</u> presumed reasonable and thereby allowing them to impose the sentence they deem <u>most appropriate</u> after considering all of the sentencing factors set forth in 18 U.S.C. Section 3553(a).

   1. Further, any appellate review of a District Court decision should be made under the more deferential "abuse of discretion" standard than the previously used "de novo" standard of review.

   2. The Supreme Court recognized in 2008 and 2009 that lower courts are still placing too much weight and emphasis on the advisory federal Sentencing Guidelines. In *Spears v. United States*, 2009 WL 129044 (Jan. 21, 2008), the Court emphasized that lower courts are in no way bound to apply the Sentencing Guidelines, and can impose a sentence lower than the Guidelines even if that sentence is based solely on the District Judge's disagreement with them:

      > **"Even when a particular defendant . . . presents no special mitigating circumstances – no outstanding service to country or community, no unusually disadvantaged childhood, no overstated criminal history score, no post-offense rehabilitation – a sentencing court may nonetheless vary downward from the advisory guideline range . . . The only fact necessary to justify such a variance is the sentencing court's disagreement with the guidelines . . ."**

   3. The Supreme Court, in a later decision, *Nelson v. United States*, 2009 WL 160585 (Jan. 26, 2009), reversed the Fourth Circuit for affirming a within-

Guidelines sentence because of the District Court's statements at the sentencing hearing that "the guidelines are considered presumptively reasonable" and that "unless there's a good reason in the 3553(a) factors . . . the guideline sentence is the reasonable sentence."

The Supreme Court explained in *Nelson*:

> **"The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable. We think it plain from the comments of the sentencing judge that he did apply a presumption of reasonableness to Nelson's Guideline range. Under our recent precedents, that constitutes error."**

**VI.   18 U.S.C. SECTION 3553 & U.S.S.G. §3.12- MITIGATION ANALYSIS**

A.  As the Guidelines are advisory, the Court is free to utilize 18 U.S.C. Section 3553(a)(1), (3)-(7) in fashioning a reasonable sentence for the Defendant. These sections require that the sentence of a federal defendant reflect:

1. The nature and circumstances of the offense and the history and characteristics of the defendant; and

2. The need for the sentence imposed:

    a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    b. to afford adequate deterrence to criminal conduct;

    c. to protect the public from further crimes of the defendant;

    d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

3. The kinds of sentences available; and

4. **<u>The need to avoid unwarranted disparity among defendants with similar records and similar crimes</u>**; The purpose of the minor role adjustment is to ensure that a low-level participant

not receive the same sentence as a higher-level participant in a conspiracy, including an average participant. Mr. Pilligua Mendoza's involvement in this conspiracy was little more than a baggage handler on a three man skiff. Notwithstanding that all defendants in a conspiracy may be held accountable for the total quantity of drugs involved, minimally involved defendants should not receive the same sentence as those more involved. A fair determination of a role assessment is to compare the defendant to all those charged and uncharged, known and unknown, who were involved in the conspiracy. For example, according to U.S. Probation PSR calculations, Mr. Pilligua Mendoza could be held responsible for an amount of cocaine equal to an offense level of organizers, planners, managers, captains, etc. Mr. Pilligua Mendoza, essentially a baggage handler on a three man skiff, occupies the lowest possible rung of this drug trafficking venture. Accordingly, this militates in favor of Mr. Pilligua Mendoza's minor role status. Mr. Pilligua Mendoza had no equity interest in the drugs, boat or equipment, had no role in planning and no role in the ultimate distribution of the drugs. Additionally, Mr. Pilligua Mendoza had no knowledge of the overall conspiracy and conspirators, did not recruit or coordinate any other participants, was not the master of the boat and had zero decision making authority. Minor role adjustments are appropriate in factual scenarios such as Mr. Pilligua Mendoza's and, consistent with that, he respectfully requests a four level reduction.

        5. The need to provide restitution to any victims of the offense.

  B. The factors of particular importance in this matter are as follows:

        1. The nature and circumstances of the offense.

            a. The Defendant is not alleged to have been violent nor is this a crime of violence.

            b. The Defendant has no prior criminal record.

            c. The Defendant was not a leader, planner, organizer, manager or financier.

## VII. REQUESTS FOR RECOMMENDATIONS AND MISCELLANEOUS ISSUES

A. The Defendant respectfully requests that he be allowed to participate in educational classes regarding reading and writing in English, as well as receive vocational training in electrical and mechanics as well as other areas that may be specified at sentencing.

B. The Defendant may request a housing location at sentencing and respectfully requests this Court state the reasons why it is making said recommendation.

## CONCLUSION

WHEREFORE, the Defendant, Jose Emilio Pilligua Mendoza, by and through undersigned counsel, respectfully requests this Honorable Court grant the requested relief herein.

By: */S/ EDWARD LIEBLING*
Florida Bar No.: 768472
Liebling Law, LLC
35246 U.S. Hwy. 19 N., #261
Palm Harbor, Fl  34684
Telephone:  (727) 725-3600
Email: EJL1@OUTLOOK.COM

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 25, 2020, I electronically filed the foregoing document with the Clerk of the Court by using CM/ECF system which will send a notice of electronic filing to the following:  All other counsel of record.

By: */s/ Edward Liebling*